**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| S A INTERNATIONAL, INC., and SAIEP, LLC,<br>Plaintiffs,<br>v.<br>S.A. INTERNATIONAL ISRAEL LTD, and SARIT TICHON,<br>Defendants. | **MEMORANDUM DECISION AND ORDER OVERRULING OBJECTIONS AND ADOPTING REPORT AND RECOMMENDATION**<br>Case No. 2:23-cv-877<br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiffs S A International, Inc. and SAIEP, LLC move for terminating sanctions against Defendants S.A. International Israel Ltd and Sarit Tichon based on Ms. Tichon's permanent deletion of hundreds of files from a work laptop subject to discovery, in violation of Federal Rule of Civil Procedure 37(e) and Magistrate Judge Bennett's prior order. *See* Dkt. No. 93. The court referred the motion to Judge Bennett.

Following an evidentiary hearing, Judge Bennett issued a report and recommendation proposing that the Plaintiffs' motion be granted in part and denied in part. *See* Dkt. No. 136. Specifically, Judge Bennett recommended that the Defendants be sanctioned by permitting the Plaintiffs to present evidence of spoliation to the jury, giving an adverse-inference instruction to the jury, precluding the Defendants from arguing at trial that any deleted file had been produced or duplicated, and awarding the Plaintiffs the attorneys' fees they incurred in preparing and litigating their motion for sanctions. *See id.* at 10. Both sides timely objected to the report and recommendation. *See* Dkt. Nos. 138–39.

On September 30, 2025, the court held a hearing on the parties' objections as well as other motions raised by the parties. *See* Dkt. No. 147. The court concluded that the portions of Judge Bennett's analysis and conclusions to which *the Defendants* objected were neither clearly erroneous nor contrary to law and thus overruled the Defendants' objections on the record. *See id.* The court further explained that it would have reached the same result had it reviewed the disputed analysis and conclusions *de novo*. *See* Dkt No. 149 at 34:22–25.

The court further concluded that the portions of Judge Bennett's analysis and conclusions to which *the Plaintiffs* objected were not contrary to law because he "identified and applied the correct legal framework, carefully considering Federal Rule of Civil Procedure 37(b) and (e), the *Ehrenhaus* factors, and the Tenth Circuit's presumption against dismissal as a sanction." Dkt. No. 149 at 33:17–20; *see also Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). But the court offered "the parties the opportunity to submit supplemental briefing addressing whether Judge Bennett's application of the fifth *Ehrenhaus* factor was clearly erroneous." Dkt. No. 147.

Having reviewed the parties' supplemental briefing, the court overrules the Plaintiffs' objections.

## I.

In their supplemental briefing, the Plaintiffs renew their argument that the court must review Judge Bennett's analysis and conclusions to which they object *de novo* rather than under a clearly-erroneous-or-contrary-to-law standard of review. The court disagrees.

Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may "hear and determine any pretrial matter pending before the court, except" for eight enumerated types of motions. For those purposes relevant here, "[t]hese eight motions are generally referred to as dispositive motions," *Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 808 (10th Cir. 2023) (cleaned up), and other matters are

referred to as "nondispositive." When a nondispositive pretrial matter is referred to a magistrate judge, Federal Rule of Civil Procedure 72(a) provides that the magistrate judge "must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." If a party timely objects to such an order, the district judge in turn "must consider timely objections and modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law." *Id.*; *see also* § 636(b)(1)(A).

Magistrate judges are not authorized to issue orders resolving the eight excepted categories of motions, however. Instead, they are authorized under Section 636(b)(1)(B) to "conduct hearings" and submit "proposed findings of fact and recommendations for the disposition" of such dispositive motions. When a dispositive matter is referred, Rule 72(b)(1) provides that the magistrate judge "must promptly conduct the required proceedings" and "must enter a recommended disposition, including, if appropriate, proposed findings of fact." If a party objects to the proposed findings and recommendation, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).

The Plaintiffs argue that the court should apply a *de novo* standard of review because their motion presented a dispositive matter that Judge Bennett lacked authority to resolve by order and because Judge Bennett in fact issued a report and recommendation rather than an order in all events. The court disagrees.

**A.**

The court first concludes that Judge Bennett was authorized under Section 636(b)(1)(A) and Rule 72(a) to issue an order rather than a report and recommendation. Judge Bennett himself recognized that "[a] magistrate judge's authority to order (rather than recommend) a discovery

sanction does not depend on the relief requested but rather depends on the sanction the magistrate judge actually imposes." Dkt. No. 136 at 10 n.56. He further acknowledged that because the sanctions he concluded were warranted—including an "adverse jury instruction"—were "not dispositive," they fell "within the authority" granted magistrate judges under Federal Rule 72(a) to resolve by order. *Id*.

These statements comport with Tenth Circuit precedent. That court has made clear that when a magistrate judge addresses a motion for discovery sanctions, "the standard of review" to be applied by the district judge "depends on an order's *actual* effect on the litigation." *Boxer F2, L.P. v. Bronchick*, 722 F. App'x 791, 796 (10th Cir. 2018). For example, "[e]ven though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction the order falls under Rule 72(a) rather than Rule 72(b)." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519–20 (10th Cir. 1995) (citing *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988)).

The Plaintiffs argue that this clear guidance in *Gomez* and *Boxer F2* should not be followed because it conflicts with the Tenth Circuit's earlier decision in *Ocelot Oil*. In *Ocelot Oil*, the Tenth Circuit explained that "motions not designated on their face as one of those excepted in subsection [636(b)(1)(A)] are nevertheless to be treated as such a motion when they have an identical effect." 847 F.2d at 1462. The Tenth Circuit accordingly held that terminating sanctions "constitute[] the involuntary dismissal of [an] action within section 636(b)(1)(A)." *Id.* Relying on *Ocelot Oil*, the Plaintiffs argue that because Section 636(b)(1)(A) requires a report and recommendation for "*motions* . . . to involuntarily dismiss an action," (emphasis added), and because the Tenth Circuit held that terminating sanctions constitute the involuntary dismissal of an action within the meaning of that statute, a motion seeking terminating sanctions must be

regarded as a motion to involuntary dismiss an action and Judge Bennett's authority to order or recommend sanctions thus turned on the sanctions the Plaintiffs' sought in their motion rather than the sanction he actually imposed.

The Plaintiffs misread *Ocelot Oil*. It is clear from the very language on which they rely that it is the "effect" of the motion—that is, the motion's disposition—not the relief sought, that matters. *Ocelot Oil Corp.*, 847 F.2d at 1462. Indeed, the Tenth Circuit's holding turned on the fact that "*the order*"—not the motion—"constitute[d] [an] involuntary dismissal . . . within section 636(b)(1)(A)." *Id.* (emphasis added). The nature of the sanctions sought in the underlying motion played no role in the court's analysis—except to the extent those sanctions were actually granted.

The Plaintiffs also rely on the Tenth Circuit's recent decision in *Quint*. There, the district court treated a magistrate judge's recommendation to deny a motion seeking a preliminary injunction as a nondispositive order and reviewed it under the clearly-erroneous-or-contrary-to-law standard. *See Quint*, 89 F.4th at 806–08. The Tenth Circuit reversed, explaining that motions expressly excepted under 28 U.S.C. § 636(b)(1)(A), including motions for injunctive relief, require *de novo* review regardless of whether the disposition resolves a claim or defense. *See id.* at 809.

But the Tenth Circuit in *Quint* "contrast[ed] . . . motion[s] expressly excepted in § 636(b)(1)(A)"—including "motion[s] for injunctive relief"—from "motions not designated on their face as one of those excepted in § 636(b)(1)(A)," such as motions for terminating sanctions. *Id.* at 808 (cleaned up). As the Plaintiffs correctly note, the Tenth Circuit made clear that motions in the *former* category require *de novo* review regardless of their disposition. *See id.* But the Plaintiffs overlook the Tenth Circuit's further explanation that motions in the *latter* category

require *de novo* review only when their disposition has an "identical *effect*" to that of an expressly excepted motion. *Id.* (emphasis added) (quoting *Ocelot Oil*, 847 F.2d at 1463). "Thus, for example, *a dismissal of claims with prejudice*"—not a motion seeking such dismissal—"whether as a discovery sanction or for some other reason, constitutes the involuntary dismissal of an action within the meaning of section 636(b)(1)(A)." *Id.* (emphasis added) (quoting *Ocelot Oil*, 847 F.2d at 1463).

For all these reasons, the court concludes that, under Tenth Circuit precedent, a motion for terminating sanctions is subject to *de novo* review when its disposition—not merely the relief sought—is dispositive. Both this rule and the court's understanding of Tenth Circuit precedent accord with the prevailing view: "As in *Ocelot Oil*, the courts have" "go[ne] beyond the label and consider[ed] the impact of the action taken on the case . . . in distinguishing between discovery sanctions that are dispositive and those that are not." 12 Wright & Miller's Federal Practice & Procedure § 3068.2 (3d ed. Apr. 2026 Update). "The critical issue here is what sanction the magistrate judge actually imposes, rather than the one requested by the party seeking sanctions." *Id.* (collecting cases).[1]

Because Judge Bennett did not impose terminating sanctions, he had authority to resolve the motion by order.

**B.**

The Plaintiffs next point out that even if Judge Bennett had the authority to resolve their motion by order, he in fact issued a report and recommendation. They argue that the court should

---

[1] *See also, e.g.*, *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 6 (1st Cir. 1999); *Wandner v. American Airlines*, 79 F. Supp. 3d 1285, 1295 (S.D. Fla. 2015); *Nunnally v. District of Columbia*, 243 F. Supp. 3d 55, 63 (D.D.C. 2017); *Cates v. Trustees of Columbia Univ.*, 330 F.R.D. 369, 372 (S.D.N.Y. 2019); *Danny Lynn Elec. v. Veolia Es Solid Waste*, No. 2:09-cv-192, 2012 WL 786843, at *1 (M.D. Ala. Mar. 9, 2012).

therefore review his analysis and conclusions *de novo*. It is true that Judge Bennett, despite expressly recognizing his authority to impose the sanctions he deemed appropriate by order, instead "merely recommend[ed] this sanction given Judge Nielson's authority over trial in this matter." Dkt. No. 136 at 10 n.56. But the court disagrees with the Plaintiffs that it is constrained by Judge Bennett's decision to issue a report and recommendation rather than an order.

To the contrary, the court concludes that it has "the authority and obligation to apply the appropriate standard of review to whatever decision is issued by the Magistrate Judge." *Bill.com v. Cox*, No. 2:23-cv-26, 2025 WL 961491, at *2 (D. Utah Mar. 31, 2025) (cleaned up). The court "may accordingly review a magistrate judge's report and recommendation addressing a nondispositive pretrial matter as if it were an order." *Id.* (collecting cases).

To be sure, the Tenth Circuit has not squarely held that a district court *must* recharacterize a report and recommendation on a nondispositive matter as an order. But it cannot be disputed that a district court *may*—and at least sometimes *must*—apply the appropriate standard of review regardless of whether a magistrate judge styles his or her analysis and conclusions as an order or a report and recommendation. A district court, for example, may not apply a clearly-erroneous-or-contrary-to-law standard of review to a magistrate judge's conclusion effectively dismissing a claim—even if the magistrate judge styles that conclusion as an "order"—because doing so would raise Article III concerns. *See Ocelot Oil Corp.*, 847 F.2d at 1463; *Quint*, 89 F.4th at 808.

While issuing a report and recommendation regarding a nondispositive matter does not raise the same constitutional concerns, the Tenth Circuit's decisions in *Ocelot Oil* and *Quint* support the proposition that the applicable standard of review is determined by 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72, not by the label the magistrate judge attaches to his or her analysis and conclusions.

That proposition is supported by the text of the statute and the rule as well. For pretrial matters other than enumerated dispositive motions, a magistrate judge is authorized under Section 636(b)(1)(A) not to issue a recommendation but rather to "hear and *determine*" the matter. (Emphasis added.) The district judge, in turn, is authorized under this statute not to review recommendations regarding such nondispositive pretrial matters *de novo*, but only to "reconsider" a magistrate judge's determination of such a matter "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*

Further, Rule 72(a) provides that "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge *must* . . . issue a *written order* stating the decision." (Emphasis added.) The district judge, in turn, "*must* consider timely objections and modify or *set aside any part of the* [*magistrate judge's*] *order that is clearly erroneous or contrary to law*." *Id*. (emphasis added).

It follows that Judge Bennett should have issued—and likely was required to issue—an order, not a report and recommendation, and that the court must now review his analysis and conclusions under the clearly-erroneous-or-contrary-to-law standard.

**II.**

As discussed, at the September 22, 2025, hearing, the court held that Judge Bennett's analysis and conclusions were not contrary to law but left open whether his "application of the fifth *Ehrenhaus* factor was clearly erroneous." Dkt. No. 147. The court now concludes that it was not.

"The clearly erroneous standard . . . requires that the reviewing court affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp.*, 847 F.2d at 1464 (quoting *United States v. U.S. Gypsum Co.*, 333

U.S. 364, 395 (1948)). "This is a high standard. As the Seventh Circuit memorably put it in an analogous context, to be clearly erroneous, a decision must be 'more than just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *Bill.com*, 2025 WL 961491, at *3 (cleaned up) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

Before imposing terminating sanctions, a court must consider the following *Ehrenhaus* factors:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus*, 965 F.2d at 921 (cleaned up). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Id.* (cleaned up).

Judge Bennett found that the first three factors weighed in favor of dismissal. He concluded, however, that the fourth factor did not because the court had not warned Ms. Tichon that dismissal would be a likely sanction for noncompliance with its order. *See* Dkt. No. 136 at 25. He likewise concluded that the fifth factor did not support dismissal because the measures he proposed would constitute effective lesser sanctions: allowing evidence of spoliation to be presented to the jury, giving an adverse-inference instruction, and precluding the Defendants from arguing that deleted information had been produced or duplicated. *See id.* at 25–27.

Invoking Judge Bennett's statement that because no one can "verify the content of the deleted files . . . , prejudice to Plaintiffs is both presumed and *incurable*," *id.* at 16 (emphasis added), the Plaintiffs argue that the sanctions Judge Bennett proposed cannot cure the prejudice

they have suffered. It follows, they maintain, that Judge Bennett clearly erred in concluding that any sanction less than terminating sanctions can be effective.

The Plaintiffs overlook the remainder of Judge Bennett's reasoning, however. While acknowledging that the "Plaintiffs and the judicial proceedings have suffered prejudice because of Ms. Tichon's actions," he explained that "assessing the extent of that prejudice is difficult." *Id.* at 25. Specifically, he acknowledged that it was possible either that "Ms. Tichon could have eliminated some damning information from her laptop," or "that none of these deletions would be sufficiently relevant to find their way into a dispositive motion or a trial." *Id.* He further recognized that "between these two possibilities lie several both more and less serious scenarios." *Id*.

Given this uncertainty, Judge Bennett concluded that "allowing the jury to assess the prejudice of Ms. Tichon's impropriety is best under the circumstances of this case." *Id*. at 26. He reasoned that "[i]f at trial, the jury struggles to find Ms. Tichon and her substantive defenses credible, the jury may use the facts and circumstances surrounding these deletions as further evidence to rule against Ms. Tichon." *Id.* "If, however, the jury credits Defendants' case and finds that it is so compelling that this discovery violation does not undermine Defendants' arguments, then the jury has considered Ms. Tichon's impropriety but has found in Defendants' favor on the merits nonetheless." *Id.*

Although this court may well have reached a different conclusion in weighing the *Ehrenhaus* factors, the Plaintiffs have not shown that Judge Bennett's analysis or his conclusion was clearly erroneous. The Plaintiffs effectively ask this court to adopt a *per se* rule that dismissal is the only effective sanction when the contents of the erased information cannot be determined. But they cite no authority for such a categorical rule.

To the contrary, the Tenth Circuit has recognized that an adverse inference is designed to address precisely this kind of uncertainty, explaining that "[a]n adverse inference is a powerful sanction as it brands one party as a bad actor and necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in the *unknown contents* of . . . erased" information. *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1219–20 (10th Cir. 2008) (emphasis added; cleaned up). For that reason, such an inference generally "require[s] evidence of intentional destruction or bad faith" rather than "[m]ere negligence." *Id.* at 1220. In light of this precedent, the court cannot conclude that Judge Bennett clearly erred in concluding that the jury could best assess the significance of the deletions given the uncertainty about their content.

The Plaintiffs also argue that the sanctions Judge Bennett proposed neither adequately deter the flagrant misconduct at issue here nor proportionately address the intentional and brazen nature of the deletions. The court shares these concerns to a significant degree. But when reviewing for clear error, the question is not whether this court would have reached a different result; it is whether Judge Bennett's conclusion falls outside the range of permissible choices. Carefully considering the egregiousness of the conduct, the uncertainty surrounding the content of the deleted material, and "the judicial system's strong predisposition to resolve cases on their merits," *Ehrenhaus*, 965 F.2d at 921 (cleaned up), Judge Bennett concluded that the "powerful sanction" of an adverse-inference instruction and the other remedies he proposed would constitute effective lesser sanctions, *Henning*, 530 F.3d at 1219.

Because the Defendants' misconduct at issue here occurred in connection with proceedings before Judge Bennett and in defiance of his orders, he was particularly well situated to weigh and determine the seriousness of the infraction, balance the *Ehrenhaus* factors, and

determine the appropriate sanction. The court is thus reluctant lightly to second-guess the balance he struck.

Especially given those circumstances, neither Judge Bennett's analysis nor his conclusions leave the court with "the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp.*, 847 F.2d at 1464 (cleaned up). Certainly, they do not "strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *Bill.com*, 2025 WL 961491, at *3 (cleaned up). For all these reasons, the court concludes that Judge Bennett's decision was not clearly erroneous.

* * *

For the foregoing reasons, the court **OVERRULES** Docket Number 138, Plaintiffs' Objection to Amended Report and Recommendation. Docket Number 93, Plaintiffs' Motion for Terminating Sanctions and Default Judgment Based upon Defendants' Willful Spoliation of Evidence, is **GRANTED IN PART and DENIED IN PART**, as explained in Docket Number 136, Amended Report and Recommendation.[2]

**IT IS SO ORDERED.**

Dated this 29th day of September, 2026.
BY THE COURT:

Howard C. Nielson, Jr.
United States District Judge

[2] In Docket Number 154, Motion to Supplement Record in Connection with Plaintiffs' Supplemental Reply Brief re Terminating Sanctions, the Defendants seek to respond to certain factual assertions made by the Plaintiffs in their reply brief. The issues the Defendants seek to address, however, are plainly irrelevant to Judge Bennett's report and recommendation and the Plaintiffs' objections to it. The court accordingly denies this motion.